FILED

07/20/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 12, 2022

## RAYMOND-BERNARD BAILEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 02-04607     Chris Craft, Judge
_____

**No. W2021-01535-CCA-R3-ECN**
_____

The pro se Petitioner, Raymond-Bernard Bailey, appeals the dismissal of his petition for writ of error coram nobis, arguing that the error coram court erred in dismissing his petition without a hearing because he has newly discovered evidence to show his innocence of the crimes. Based on our review, we affirm the summary dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR. J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., ROBERT L. HOLLOWAY, JR., JJ., joined.

Raymond-Bernard Bailey, Wartburg, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In 2005, the Petitioner was convicted by a Shelby County Criminal Court jury of especially aggravated kidnapping and carjacking and was sentenced by the trial court to an effective term of forty years in the Tennessee Department of Correction. His convictions were affirmed on direct appeal, and our supreme court denied his application for permission to appeal. *State v. Raymond Bailey*, No. W2004-00512-CCA-R3-CD, 2005 WL1215965, at *1 (Tenn. Crim. App. May 20, 2005), *perm. app. denied* (Tenn. Oct. 17. 2005).

The victim of the especially aggravated kidnapping and carjacking was Ms. Beverly Grice, who had just dropped off an acquaintance at a Memphis bus stop when the armed Petitioner suddenly jumped into her 1998 Oldsmobile Intrigue and ordered her at gunpoint to "drive." *Id.* Our direct appeal opinion provides the following summary of the crimes:

> On October 11, 2001, at approximately 9:30 p.m., [the victim] dropped off her acquaintance "Mookie" Golstein at a bus stop between Camelia and Somerville on Crump in Memphis. As Golstein stood outside the opened passenger door thanking [the victim] for the ride, the [Petitioner] ran down a hill beside the car and jumped inside. The [Petitioner] held a gun to [the victim's] neck and shouted, "Bitch, drive." The victim drove approximately fifty to seventy-five feet before stopping her vehicle at a red light. At that point, the [Petitioner] ordered the victim to pass her purse to him and turn on the interior lights. The victim nervously struggled to turn on the lights and eventually pulled down the passenger side sun visor, which activated a light on the visor. While the [Petitioner] was rummaging through [the victim's] purse with the gun on his left leg, the victim attempted to grab the gun, and a struggle ensued. The victim then jumped out of the car and ran through Lamar Terrace Apartments to a store and called 9-1-1. [The victim] described the perpetrator as a five foot four inch tall black male around twenty-four years old with gold teeth.

*Id.*

The victim described the perpetrator to the responding police officer as a 5'3" tall black man approximately twenty-one to twenty-six-years-old, 150 pounds, with four gold teeth. *Id.* Several days later, the victim's wrecked vehicle was recovered. *Id.* Inside it was a cell phone that a police detective traced to Mr. William Isom. *Id.* The detective prepared a photospread with Mr. Isom's photograph and showed it to the victim, who "confirmed that the carjacker's photograph was not included in the photospread." *Id.*

Several weeks later, the victim saw the perpetrator when she was picking up her goddaughter from the home of the goddaughter's grandmother. *Id.* at 82. The victim contacted the robbery detective and police officers apprehended the Petitioner at the home a few days later. *Id.* The victim identified the Petitioner as the perpetrator from a photograph the detective took of the Petitioner upon his arrest. *Id.* The victim also made a positive courtroom identification of the Petitioner at trial, describing his appearance at the time of the crimes as a "black man with dark skin, trimmed facial hair along his jaw line, a low haircut, and at least four gold teeth" and stating that she recognized him in the courtroom by his face and his voice, although he had since "gained weight and no longer had gold teeth." *Id.*

The Petitioner subsequently filed a petition for post-conviction relief in which he argued, among other things, that his trial counsel was ineffective for failing to investigate Mr. Isom and to subpoena him as a witness at trial. *Raymond Bailey v. State*, No. W2008-01657-CCA-R3-PC, 2009 WL 3754369, at *1 (Tenn. Crim. App. Nov. 10, 2009), *perm app. denied* (Tenn. Apr. 16, 2010). Mr. Isom testified at the post-conviction hearing that his phone had been stolen on October 14, 2001, that he informed the police of that fact, and that he was not involved in the crimes. *Id.* at *3. Trial counsel testified that she did not subpoena Mr. Isom to testify at trial because the victim excluded Mr. Isom as the perpetrator and trial counsel did not believe his testimony would have been beneficial. *Id.* at * 4. At the conclusion of the hearing, the post-conviction court denied the petition. *Id.* at *1. This court affirmed the judgment of the post-conviction court, and our supreme court denied the Petitioner's application for permission to appeal. *Id.*

On August 31, 2021, the Petitioner filed the instant petition, which he titled "Common-Law Writ of Error Coram Nobis/Writ of Injunction by a Human in State Custody." After a number of paragraphs about his status as the "beneficiary and sovereign of the "Raymond-Bailey: Bernard" trust, the Petitioner asserted that it was his first application for a writ of error coram nobis because his previous filing "was not adjudicated." No previous filing is included in the record on appeal. However, in its order denying relief in the instant case, the coram nobis court referenced the Petitioner's December 2, 2008 petition for writ of error coram nobis that was summarily denied on May 11, 2009.

In the instant petition, the Petitioner argues that the statute of limitations for bringing a petition for writ of error coram nobis should be tolled because he has newly discovered evidence that "would have assisted the jury . . . because evidence of [the Petitioner's] guilt was largely circumstantial, and was based on a sole eyewitness identification." In support, the Petitioner cites various exhibits attached to his petition, including supplemental police reports containing information about the discovery of the cell phone in the victim's vehicle, the victim's description of the perpetrator, and information that the victim's vehicle was registered to the victim's mother; a police incident report about an October 13, 2001 vehicle collision involving the victim's carjacked vehicle in which two African Americans in their early twenties fled from the wrecked vehicle; the criminal record of Mr. Isom; and an unidentified sheet of paper containing the following handwritten notations: "5' 4[,]" "Dark Skin[,]" "4 Golds[,]" "[Dre] ad locks[,]" and "Jenell Reese."

On November 8, 2021, the coram nobis court entered an order summarily denying the petition on the grounds that it was untimely and there was nothing in the Petitioner's alleged newly discovered evidence that would have resulted in a different judgment had it been presented at trial. The coram nobis court noted that much of the alleged newly discovered evidence the Petitioner attached to his petition was irrelevant to his case and

that the issue of the Petitioner's identity as the perpetrator was thoroughly addressed at trial. This appeal followed.

## ANALYSIS

On appeal, the Petitioner contends that the coram nobis court erred in summarily denying his petition without an evidentiary hearing. The State contends that the summary denial of the petition was proper because the petition was filed more than sixteen years too late and the Petitioner failed to allege any facts that would warrant that the statute of limitations be tolled. We agree with the State.

A writ of error coram nobis is an extraordinary remedy by which the court may provide relief from a judgment under only narrow and limited circumstances. *State v. Mixon*, 983 S.W.2d 661, 666 (Tenn. 1999). Tennessee Code Annotated section 40-26-105 provides this remedy to criminal defendants:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

Tenn. Code Ann. § 40-26-105(b), (c); *see State v. Vasques*, 221 S.W.3d 514, 525-28 (Tenn. 2007) (stating that the standard of review is "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.").

A petition for writ of error coram nobis

> may be granted only when the *coram nobis* petition is in writing, describes with particularity the substance of the alleged newly discovered evidence, and demonstrates that it qualifies as newly discovered evidence. In order to qualify as newly discovered evidence, the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible.

*Nunley v. State,* 552 S.W.3d 800, 816 (Tenn. 2018).

- 4 -

To be considered "without fault," the petitioner must show that "the exercise of reasonable diligence would not have led to a timely discovery of the new information." *Vasques*, 221 S.W.3d at 527. "[C]oram nobis petitions with inadequate allegations are susceptible to summary dismissal on the face of the petition, without discovery or an evidentiary hearing." *Nunley*, 552 S.W.3d at 831.

A petition for a writ of error coram nobis must be filed within one year after the judgment becomes final. Tenn. Code Ann. § 27-7-103. For the purposes of coram nobis relief, a judgment becomes final thirty days after the entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. *Mixon*, 983 S.W.2d at 670. The one-year statute of limitations may, however, be tolled on due process grounds if the petitioner seeks relief based upon newly discovered evidence of actual innocence. *Nunley*, 552 S.W.3d at 828-29 (citation omitted). "If a petition for a writ of error coram nobis fails to show on its face either that it has been timely filed in accordance with Tennessee Code section 27-7-103 or specific facts showing why the petitioner is entitled to equitable tolling of the statute of limitations, the trial court is within its discretion to summarily dismiss it." *Id.* at 829. Although the decision to grant or deny coram nobis relief rests within the sound discretion of the trial court, *see Vasques*, 221 S.W.3d at 527-28, "[w]hether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." *Nunley*, 552 S.W.3d at 830 (citation omitted).

We agree with the State that the Petitioner's instant petition was untimely by at least sixteen years and that the Petitioner has not alleged any facts to justify due process tolling of the statute of limitations. On appeal, the Petitioner relies on four items as alleged newly discovered evidence: two hand-written, unsigned pages of notes written on lined paper that appear to discuss facts in an unrelated case involving three suspects in a Toyota; a supplemental police report in the instant case reflecting that the victim's vehicle was registered to the victim's mother; the handwritten note with the physical description of someone and the name Jenell Reese; and a typed printout showing that a 1982 Oldsmobile was registered to Reginald Ishmon. None of this alleged "evidence" qualifies as newly discovered evidence sufficient to justify the tolling of the statute of limitations. We, therefore, affirm the coram nobis court's summary denial of the petition.

## CONCLUSION

Based on our review, we affirm the judgment of the coram nobis court.


_____
JOHN W. CAMPBELL, SR. JUDGE